IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CODY STEELE and ARMANDO RAMOS, individually and on behalf of all persons similarly situated, | : : : : |
| Plaintiffs, | : Civil Action No.: : |
| v. | : : |
| Lehigh Valley Underground, LLC, d/b/a Jack Grace Construction LLC, d/b/a Jack Grace Constructions, LLC, d/b/a Vertech; | : Jury Trial Demanded : : : |
| Jack Grace Construction LLC, d/b/a Lehigh Valley Underground, LLC, d/b/a Jack Grace Constructions, LLC, d/b/a Vertech, a dissolved limited liability company; | : : : : : |
| ANDREW MIKLOS; and | : : |
| CHRISTINA MIKLOS | : : |
| Defendants. | : : |

## COMPLAINT – CLASS AND COLLECTIVE ACTION

Plaintiff Cody Steele ("Steele") and Armando Ramos ("Ramos"), by and through their undersigned counsel, individually and on behalf of all persons similarly situated,[1] hereby file this Class and Collective Action Complaint against Defendant Lehigh Valley Underground, LLC, d/b/a Jack Grace Construction LLC, d/b/a Vertech; Defendant Jack Grace Construction LLC, d/b/a Lehigh Valley Underground, LLC, d/b/a Vertech; Defendant Andrew Miklos; and Defendant Christina Miklos (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101 *et seq.* ("PMWA").

---

[1] All allegations herein with respect to Plaintiffs are made based upon their own personal knowledge and allegations with respect to others are made upon information and belief.

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. Jurisdiction of Plaintiff's PMWA claims are proper under 28 U.S.C. § 1367.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The events giving rise to Plaintiff's claims occurred within this District, Defendants conduct business in this District, and Defendants are headquartered in this District.

## PARTIES

4. Plaintiff Cody Steele ("Steele") is an individual currently residing in Bangor, Pennsylvania. He was employed as a Field Construction Worker by Defendants and worked in Lehigh and Northampton Counties, Pennsylvania, from approximately April 2017 through and including approximately late December 2017, and, pursuant to 29 U.S.C. § 216(b) has consented in writing to being a Plaintiff in this action. *See* Ex. A.

5. Plaintiff Armando Ramos ("Ramos" and collectively with Steele, "Plaintiffs") is an individual currently residing in Bangor, Pennsylvania. He has been employed as a Field Construction Worker by Defendants and worked in Lehigh, Bucks and Northampton Counties, Pennsylvania, from approximately early 2016 through present, and, pursuant to 29 U.S.C. § 216(b) has consented in writing to being a Plaintiff in this action. *See* Ex. B.

6. Defendant Lehigh Valley Underground, LLC ("LVU"), d/b/a Jack Grace Construction LLC, d/b/a Jack Grace Constructions LLC, d/b/a Vertech is a Pennsylvania limited liability company headquartered at 4136 Bethman Road, Easton, Pennsylvania, 18045, and operating in the surrounding area.

7. Defendant Jack Grace Construction LLC, ("JGC") d/b/a Lehigh Valley

Underground, LLC, d/b/a Jack Grace Constructions LLC, d/b/a Vertech is a dissolved New Jersey limited liability company headquartered at 4136 Bethman Road, Easton, Pennsylvania, 18045, and operating in the surrounding area.

8.  Defendant Andrew Miklos ("Andrew") is an adult individual who resides in Easton, Pennsylvania.  Andrew is an owner and/or managing agent of LVU and JGC.

9.  Defendant Christina Miklos ("Christina") is an adult individual who resides in Easton, Pennsylvania.  Christina is an owner and/or managing agent of LVU and JGC.

10. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

11. Defendants' annual gross volume of business exceeds $500,000.

12. Defendants jointly comprise an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA.

## CLASS DEFINITIONS

13. Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of himself and the following class of potential opt-in litigants:

> All current or former field construction workers who performed work anywhere in the United States for Defendant Lehigh Valley Underground or Defendant Jack Grace Construction, who worked at least one workweek in excess of forty (40) hours within the past three (3) years (the "FLSA Class").

14. Plaintiffs bring Count II of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of himself and the following class:

> All current or former field construction workers who performed work anywhere in Pennsylvania for Defendant Lehigh Valley Underground or

Defendant Jack Grace Construction, who worked at least one workweek in excess of forty (40) hours within the past three (3) years (the "Pennsylvania Class").

15. The FLSA Class and the Pennsylvania Class are together referred to as the "Classes."

16. Plaintiffs reserve the right to redefine the Classes and to assert claims on behalf of other classes prior to notice or class certification, and thereafter, as necessary.

## FACTS

### Employment by LVU and JGC

17. Defendants operate an electrical construction and maintenance business, whose customers are primarily or exclusively local electric power utilities.

18. Defendants provide construction and maintenance services on a power utility's distribution systems.

19. During the past three years, at any given time, LVU and JGC employed approximately thirty (30) Field Construction Workers in Pennsylvania, including Plaintiffs and the Classes. Factoring in turnover, LVU and JGC employed well in excess of forty (40) Construction Workers in Pennsylvania over the last three years.

20. As employees of LVU and JGC, Plaintiffs and the Classes performed various type of electrical construction and maintenance work on electrical distribution power systems for local power utilities.

21. From approximately April 2017 through approximately late December 2017, Plaintiff Steele typically worked a range of approximately 40-50 hours per week for JGC, averaging approximately 45 hours per week.

22. Plaintiff Steele's work for Defendants included constructing, maintaining,

installing and connecting electrical equipment on a power utility's distribution systems.

23. Plaintiff Steele was illegally classified as an independent contractor and paid on a day-rate basis. Plaintiff Steele never received an overtime premium for hours worked over forty in a workweek.

24. Since approximately early 2016, Plaintiff Ramos was employed by LVU and JGC. Plaintiff Ramos typically worked a range of approximately 45-60 hours per week for LVU and JGC, averaging approximately 53 hours per week.

25. Plaintiff Ramos' work for Defendants included constructing, maintaining, and installing electrical equipment on a power utility's distribution systems.

26. From approximately early 2016 through approximately November 2018, Plaintiff Ramos was illegally classified by LVU and JGC as an independent contractor and paid on a day-rate basis. Plaintiff Ramos never received an overtime premium for hours worked over forty in a workweek.

27. Since approximately December 2018, Plaintiff Ramos has been classified as an employee of LVU. As a classified employee, Plaintiff Ramos is paid on an hourly basis, but still does not receive any overtime premium for the hours he works over forty in a workweek.

28. The Classes were similarly classified as either independent contractors or exempt employees, and in any case were not provided any overtime premium for hours worked over forty in a workweek.

### Employer Status

29. Federal courts weigh several non-exclusive factors in order to determine whether, as a matter of "economic reality," an employment relationship exists. For example, in *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985), the Court of Appeals for the

Third Circuit considered the following factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship;
> 6) whether the service rendered is an integral part of the alleged employer's business.

30. Defendants supervised the work of Plaintiffs and the Classes and had the ability to control and did control the manner in which that work was performed.

31. Plaintiffs and the Classes enjoyed no opportunity for profit or loss based on managerial skill. Rather, they were paid purely on an hourly or day-rate basis and exercised no managerial duties or skill.

32. Plaintiffs and the Classes provided no significant investment in equipment or materials required for their work. Plaintiffs and the Classes did not employ helpers or any other employee.

33. The work of Plaintiffs and the Classes did not require special skill. Rather, their work was routine electrical construction work.

34. The working relationship between Defendants and Plaintiffs/Classes was in a nature of a permanent relationship. Day to day and week to week, Plaintiffs and the Classes were regularly employed by Defendants as Field Construction Workers.

35. The work of Plaintiffs and the Classes was electrical construction work. The very business of Defendants is electrical construction work. Thus, the work of Plaintiffs and the Classes is integral to Defendants' business.

### **Individual Liability – Andrew Miklos**

36. At all relevant times, Andrew was a principal of, and owned an interest in, JGC and LVU.

37. Andrew directed the work of Plaintiffs and the Classes at both JGC and LVU.

38. Andrew had the power to, and did, hire, fire and discipline Field Construction Workers at both JGC and LVU.

39. As described herein, Andrew exercised supervisory authority over Plaintiffs and the Classes. Furthermore, Andrew also exercised discretionary control over payroll decisions with respect to Plaintiffs and the Classes. Thus, Andrew also was an employer within the meaning of the FLSA and the PMWA. *See Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012); *Schneider v. IT Factor Prods.*, No. CIV.A. 13-5970, 2013 WL 6476555 (E.D. Pa. Dec. 10, 2013).

### **Individual Liability – Christina Miklos**

40. At all relevant times, Christina was a principal of, and owned an interest in, JGC and LVU.

41. Christina directed the work of Plaintiffs and the Classes at both JGC and LVU.

42. Together with Andrew, Christina had the power to, and upon information and belief, did, hire, fire and discipline Field Construction Workers at both JGC and LVU.

43. Christina controlled payroll decisions of JGC and LVU, including the decision not to pay Plaintiffs and the Classes overtime compensation.

44. Christina was in charge of human resource and employee safety issues, often communicating with public labor agencies on Defendants' behalf concerning JGC and LVU employees.

45. As described herein, Christina exercised supervisory authority over Plaintiffs and the Classes. Furthermore, Christina also exercised discretionary control over payroll decisions with respect to Plaintiffs and the Classes. Thus, Andrew also was an employer within the meaning of the FLSA and the PMWA. *See Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012); *Schneider v. IT Factor Prods.*, No. CIV.A. 13-5970, 2013 WL 6476555 (E.D. Pa. Dec. 10, 2013).

### Single Employer/Joint Employers

46. At any given point in time within the last three years, one or more of JGC and LVU ("Corporate Employers") *directly* employed Plaintiffs and the Classes.

47. To the extent there was overlap in the operation of Corporate Employers, they were together functionally integrated in that they utilized the same or similar construction equipment, tools, and labor relations personnel. Corporate Employers each implemented and carried out the same labor relations policies including the salary basis compensation of Plaintiff. Corporate Employers each exhibited common ownership and control, including through Andrew and Christina. Thus, Corporate Employers constitute a single employer. *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982).

48. Alternatively, even if Corporate Employers are not functionally integrated such that they constituted "one integrated enterprise," *id*, Corporate Employers jointly employed Plaintiffs and the Classes because Corporate Employers through Andrew and Christina or other agents, shared or co-determined control over Plaintiffs and the Classes with respect to the terms and conditions of employment. *Id.* at 1124; 29 C.F.R. § 791.2(b).

### Successor Employer/Alter-Ego/Shareholder Distributions

49. JGC operated the electrical construction business owned and controlled by

Andrew and Christina from the inception of Plaintiffs' and the Classes' employment through approximately 2019.

50. LVU has operated the electrical construction business owned, controlled and managed by Andrew and Christina from approximately 2019 through present, and has continued to provide the same related electrical construction services as had JGC.

51. LVU continued JGC's management structure, through at least Andrew and Christina.

52. LVU generally continued to employ the same or similar employees as had JGC.

53. LVU generally continued to operate out of the same physical location(s) as JGC.

54. LVU generally continued to serve the same or similar customers as JGC, including PPL, an electric utility.

55. LVU generally possessed the same or similar assets as JGC.

56. LVU had actual or constructive knowledge of the potential wage and hour liabilities of JGC, through at least the continuity described above and the circumstances described in this Complaint.

57. JGC does not itself have the ability to pay the judgment requested in this action.

58. LVU is liable as a successor employer for JGC's wage and hour liability under federal and state law. *See Thompson v. Real Estate Mortgage Network*, 748 F.3d 142 (3d Cir. 2014).

59. Alternatively, LVU and JGC are mere alter-egos of each other.

60. In or about 2018, was dissolved by the New Jersey Secretary of State.

61. Despite knowledge of wage and hour liabilities to its employees, JGC's remaining assets were distributed to Andrew and Christina.

**Willfulness**

62. In or about 2017, the Pennsylvania Department of Labor and Industry ("DLI") investigated Defendants concerning their classification of their field construction employees as independent contractors under various state labor laws.

63. As opposed to true independent contractors, only employees enjoy the protections of numerous federal and state labor laws which regulate an employee's wages. Unless otherwise exempt, pursuant to the FLSA and PMWA, employees enjoy the right to receive overtime pay when they work more than forty hours in a workweek.

64. It is well established that construction workers such as Defendants' Field Construction Workers, are not exempt employees. See, e.g., 29 C.F.R. §§ 541.3. The Pennsylvania Construction Workplace Misclassification Act, 43 P.S. §§ 933.1 -- 933.17 ("Act 72") further clarifies the employment relationship under state law.

65. In or about 2017, DLI found that field construction workers performing services for JGC were employees as a matter of law under and thus that JGC had misclassified their construction employees as independent contractors.

66. As a result of its investigation, DLI assessed fines against JGC.

67. On multiple occasions, Plaintiff Steele complained on the job to Andrew that he was not receiving overtime pay, even though he was working more than 40 hours a week. Others also made similar complaints to Andrew.

68. In or about December 2017, after Plaintiff Steele's last day of work, Andrew called Plaintiff Steele on the telephone as he was travelling home. Plaintiff Steele complained to Andrew again that he should receive overtime pay. During that same telephone call, Andrew fired Plaintiff Steele.

69. To date, Defendants have willfully refused not only to pay the assessed fines, but have also willfully refused to reclassify their field construction workers as non-exempt employees or to pay them overtime wages when they work over forty hours in a workweek.

70. Defendants do not maintain accurate records of the actual hours that Plaintiffs and FLSA Class Members worked each workday and the total hours worked each workweek as required by the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5(a), 516.6(a)(1).

71. Defendants knew or should have known that Plaintiffs and FLSA Class Members were not exempt from the FLSA's overtime requirements.

72. Defendants are sophisticated businesses with access to knowledgeable human resource specialists and competent labor and employment counsel.

73. Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions by failing to pay Plaintiffs and the FLSA Class overtime pay when worked.

## COLLECTIVE ACTION ALLEGATIONS

74. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class defined above.

75. Plaintiffs desire to pursue their FLSA claims individually and on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

76. Plaintiffs and the FLSA Class are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked as Construction Workers pursuant to Defendants' previously described common pay practices and, as a result of those practices, were not paid overtime wages as required by 29 U.S.C. § 207. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping, and payroll practices.

77. The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' business and human resource records.

78. Defendants employ many FLSA Class Members. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

79. Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of himself and the Pennsylvania Class defined above.

80. The members of the Pennsylvania Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are in excess of thirty (30) members of the Pennsylvania Class.

81. Plaintiffs will fairly and adequately represent and protect the interests of the Pennsylvania Class because there is no conflict between the claims of Plaintiffs and those of the Pennsylvania Class, and Plaintiffs' claims are typical of the claims of the Pennsylvania Class. Plaintiffs' counsel are competent and experienced in litigating wage and hour and other complex labor matters, including class and collective actions like this one.

82. There are questions of law and fact common to the proposed Pennsylvania Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Defendants have violated and continue to violate Pennsylvania law through their policies or practices of not paying overtime wages for hours worked over 40 in a workweek, as mandated by 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

83. Plaintiffs' claims are typical of the claims of the Pennsylvania Class in the following ways, without limitation: (a) Plaintiffs are members of the Pennsylvania Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Pennsylvania Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Pennsylvania Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Steele and the Pennsylvania Class Members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Pennsylvania Class members.

84. Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Pennsylvania Class predominate over any questions affecting only individual Class members.

85. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The Pennsylvania Class is readily identifiable from Defendants' own employment records.  Prosecution of separate actions by individual members of the Pennsylvania Class would create the risk of inconsistent or varying adjudications with respect to individual Pennsylvania Class members that would establish incompatible standards of conduct for Defendants.

86. A class action is superior to other available methods for adjudication of this

controversy because joinder of all members is impractical. Furthermore, the amounts at stake for many of the Pennsylvania Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

87. Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiffs and the Pennsylvania Class. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
### Violations of the Fair Labor Standards Act
### (On Behalf of the FLSA Class)

88. All previous paragraphs are incorporated as though fully set forth herein.

89. The FLSA requires that covered employees be compensated for all hours worked at a rate of not less than $7.25 per hour. *See* 29 U.S.C. § 206(a)(1).

90. LVU is subject to the wage requirements of the FLSA because LVU is an "employer" under 29 U.S.C. § 203(d).

91. During all relevant times, LVU is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

92. JGC is subject to the wage requirements of the FLSA because JGC is an "employer" under 29 U.S.C. § 203(d).

93. At all relevant times, JGC is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

94. Andrew is subject to the wage requirements of the FLSA because Andrew is an "employer" under 29 U.S.C. § 203(d), as he exercised supervisory control over Plaintiffs and the

FLSA Class and accordingly acted in the interest of LVU and JGC. *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012).

95. At all relevant times, Andrew is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

96. Christina is subject to the wage requirements of the FLSA because Christina is an "employer" under 29 U.S.C. § 203(d), as he exercised supervisory control over Plaintiffs and the FLSA Class and accordingly acted in the interest of LVU and JGC. *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012).

97. At all relevant times, Christina is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

98. During all relevant times, Plaintiff Steele and the FLSA Class were covered employees of Defendants, and as such were entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

99. Plaintiffs and the FLSA Class are not exempt from the requirements of the FLSA. Plaintiffs and the FLSA Class are entitled to be paid at Overtime Rate for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

100. Defendants failed to comply with 29 U.S.C. § 207(a)(1) by failing to compensate Plaintiffs and the FLSA Class at Overtime Rate for all hours worked over forty (40) in a workweek.

101. Defendants knowingly failed to compensate Plaintiffs and the FLSA Class at Overtime Rate for all hours worked in excess of forty (40) hours per workweek, in violation of

29 U.S.C. § 207(a)(1).

102. Defendants also failed to make, keep, and preserve records with respect to Plaintiffs and the FLSA Class sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(a)(5).

103. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

104. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the Pennsylvania Minimum Wage Act
### (On Behalf of the Pennsylvania Class)

105. All previous paragraphs are incorporated as though fully set forth herein.

106. The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated for all hours worked. *See* 43 P.S. § 333.104(a) and 34 PA. CODE § 231.21(b).

107. The PMWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at Overtime Rate. *See* 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

108. Defendants are subject to the overtime requirements of the PMWA because Defendants are employers under 43 P.S. § 333.103(g).

109. As principals and managing against of LVU and JGC and those who controlled payroll decisions, including the decision not to pay Plaintiffs or the Pennsylvania Class an overtime premium, Defendants Andrew and Christina were each employers of Plaintiffs and the FLSA Class within the meaning of the PMWA.  *See, e.g., Schneider v. IT Factor Prods.,* No. CIV.A. 13-5970, 2013 WL 6476555 (E.D. Pa. Dec. 10, 2013).

110. During all relevant times, Plaintiffs and the Pennsylvania Class were covered employees entitled to the above-described PMWA's protections.  *See* 43 P.S. § 333.103(h).

111. Defendants failed to compensate Plaintiffs and the Pennsylvania Class at an Overtime Rate for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

112. Pursuant 43 P.S. § 333.113, employers, such as Defendants, who fail to pay an employee wages in conformance with the PMWA shall be liable to the employee for the wages or expenses not paid, interest, court costs and attorneys' fees incurred in recovering the unpaid wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief individually, and on behalf of all others similarly situated:

   a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

   b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class members;

   c. An order permitting this litigation to proceed as a class action pursuant to FED. R. CIV. P. 23 on behalf of the Pennsylvania Class;

   d. Unpaid overtime wages and prejudgment interest to the fullest extent permitted

under the law;

e. Liquidated damages and penalties to the fullest extent permitted under the law;

f. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

g. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated:   April 2, 2020                              Respectfully Submitted,

                                                    JENNINGS SIGMOND, P.C.

                                    by:    */s/ James E. Goodley*
                                           James E. Goodley (PA 315331)
                                           Marc L. Gelman (PA 78857)
                                           Ryan McCarthy (PA 323,125)
                                           1835 Market Street, Suite 2800
                                           Philadelphia, PA 19103
                                           Telephone: (215) 351-0613
                                           Facsimile: (215) 922-3524
                                           jgoodley@jslex.com

                                           *Attorneys for Plaintiff and the Classes*